The New York Times Company v. Twitter, Case Number 251608. Hold on one second. Sorry. Oh, no, you're good. Hold on.  I may request that the time be reset. May I please... Hold on one second. Oh, sorry. All right. Good morning. Good morning. May it please the Court, Kenneth Trujillo Jamieson on behalf of Appellants. The District Court incorrectly denied Ex Corp's motion to seal the arbitration award at issue in this case for at least three reasons. First, the District Court erred by determining that the First Amendment presumption of public access attached to this award. Second, it incorrectly determined that even if the presumption properly applied, that the higher values of confidentiality endorsed by the Federal Arbitration Act, in addition to the fact that this arbitration award was never considered on the merits by the District Court because the petitioner voluntarily dismissed the petition before the District Court did that, it didn't properly consider all of those as higher values weighing against unsealing the award under the First Amendment right of public access. And then third, the District Court, it didn't directly address this in its decision, but it abused its discretion by not permitting Ex Corp to file an amended motion to seal, to address, to attempt to address the concerns raised by the District Court. On the first point, which is that the District Court incorrectly determined that the First Amendment right of public access attached to the award as a... Didn't you acknowledge this? No, Your Honor. If you look at our letter motion, we did not expressly concede this point, and I think... Expressly concede the point. So did you forfeit it? We would say we did not, Your Honor. I think... Well, I know you would say that, but, you know, when you start out by saying we didn't expressly concede the point and there's really no dispute, at least on this record, about that point, what are we to make of that? In other words, it seems to me that you agree, actually, but even if you didn't agree and you were silent, you would agree hypothetically, if that were the case, that you forfeited the argument before Judge Woods. I guess I would point out, I think, the peculiar posture, at least a relatively unique posture that this issue came before Judge Woods. You know, after the case was dismissed, the New York Times sought to unseal the award, and so Judge Woods granted leave to file a motion to seal and also granted the New York Times leave to file a reply. I think your argument is that you kind of took for granted what you thought the District Court already had decided, which is that the presumption applied. Is that your argument? That's part of it, Your Honor, but I think also that I think because of the posture and the – because of the fact that our – Your Honor, even putting aside the forfeiture or whatever, like, didn't we say in GIFRA the identification of a judicial document is a binary decision made as of the time of the document's filing, i.e., filed material either is or is not a judicial document, depending on whether it could have a tendency to influence the court in the exercise of its Article III powers. Subsequent events do not alter that conclusion. So doesn't that mean, like, you file a document with the court that could play a role in a judicial decision as a judicial document? I guess I'd say there's a couple points there, Your Honor. I think with respect to the judicial document point, although we acknowledge, obviously, the GIFRA decision, I think that decision sort of calls into question its applicability in a context where the arbitration award, which comes from a confidential proceeding, presumably would have the right to be sealed in the initial instance, so – but I'm aware of that. Yeah, but wouldn't just the confidentiality be one of the higher values? Like, it is a judicial document, but we do take into account whether the First Amendment interest is overcome. We do agree that it would go to one of the higher values. Yes, Your Honor. Let's assume for the sake – sorry. Yeah. So then your argument that, like, it didn't play a role in the decision, I guess we haven't said this expressly, that that's something that we apply in the First Amendment analysis, but we have said that the point of the First Amendment analysis is it's an aspect of the public access to courts to observe what the courts are doing, and so, you know, should it be the case that when you're doing a balancing between the First Amendment interest and the other values you would take into account whether, you know, it plays some – whether access to this document would allow the public to understand how the courts are functioning? Yes, I think that's correct, Your Honor, and I think – but I think in – you know, this case presents somewhat of a unique circumstance where you have both the strong interest and confidentiality – again, this has been recognized by this court, recognized under the Federal Arbitration Act – but you also have this peculiar situation where the petition was filed and then nine days later the petition was dismissed, and so we have the fact that it did make it – I guess what you're saying, you're saying, well, like, it really didn't actually play a role in what the court did, right? Yes, and I think that's something that – I'm saying it seems like we've said that it's a judicial document nonetheless, but maybe when we're doing the balancing, the fact that it played no role in judicial decision is something that you take into account. I think that's right, although I think – and maybe this is in part – and I think Your Honor would agree there's somewhat of an evolving or developing area of the law with the circuit, but I think the way that intersects with the First Amendment, the district courts seem to think that these other concerns about the process in the case and the fact that the petition was dismissed was irrelevant. That's what I'm saying, is maybe that's not right. I mean, we've articulated this common law test. We've articulated the First Amendment test. That's an aspect of access to courts. If the district court is right about the way the First Amendment test works, then the common law test is never relevant, right? Well, I think – The court did here. They just ignored the common law test and did the First Amendment, but it seems odd that we would have articulated a test that never really does any work, right? So maybe they're related. I mean, often we do operationalize constitutional rights by reference to analogous common law rights, right? Yes, I agree with that, and I think it kind of – going maybe also to Judge Lohier's question as well about the point in the award. I think what the district court did not do here also is to do an analysis to confirm that this particular award fell within the scope of the First Amendment, and that would be under the experience and logic test. And because the district court, in our view, read silence as agreement, that the court did not, as a threshold matter, determine whether the First Amendment was.  I was particularly attached to the idea that this isn't a judicial document. So then why wouldn't that be the case? So if, in fact, it was filed with a motion to confirm, the district court could have looked at it to decide to confirm the award. And so then isn't it just obvious that it could have played a role in a judicial decision? So if, in fact, whether something's a judicial document is a binary decision you make up front, why wouldn't this be a judicial document? Well, I think I acknowledge under Giuffre that based on that decision, you make that decision at the time it was filed. So let's assume for the sake of argument between Giuffre and the fact that even Stafford, which to me looks pretty on point here, says that ordinarily these things are judicial documents, right? Let's just assume for the sake of argument. Actually, I'm not saying I agree that it is a judicial document, but I'm saying let's move past that and let's talk about what Judge Venasi is pointing you to, which is the question of how do these things balance. And in particular, as you sort of alluded to, the purpose of ensuring access, right, is to let the public, who are our constituency, understand what we as the courts are doing with things. And the court here didn't do anything with this. And so I'm trying to figure out what higher value is served by unsealing this to be balanced against the higher values of the FAA's confidentiality and the party's expectations. Well, I think, Your Honor, because the district court didn't do anything with the award, I don't think there is a higher value that's been identified in this case about why the award should be unsealed. It was sort of a nine-day proceeding that never bore on what the district court ever did. And so unsealing the award in this context would not vindicate the purpose of the right in the first place. Did you even make this argument? Did we make the argument? Did you make this argument about balancing and higher values? Yes, we did, Your Honor, in the letter motion. Okay. And is there anything in the record that tells us, because looking at Stafford, one of the issues is, well, the arbitration award was fully paid, and so there was a mootness question. Is there anything in the record in this case that tells us the status of the award that is summarized in the disputed document? No, Your Honor. And, you know, one argument about Stafford is, well, there it's the lawyer who's trying to unseal the document, and here the New York Times comes in and wants to unseal the document. Is your argument that that doesn't matter because this is still a method for circumvention of the confidentiality of awards, or it's that the lawyer probably cahoots with the New York Times, or both of those? I'd say we don't have in this record anything about what Petitioner's Counsel, aside from the initial motion to seal that was filed that said that it was filed only because Petitioner's Counsel, that Twitter wanted to keep it under seal. What I would say, though, Your Honor, is that I think this bore out in the Coronet case which we cited in our opening brief, but I think it's something that's highlighted in the several cases that this Court has dealt with, is that there is a concern about circumventing the docket through this gambit. I don't have, you know, I think, you know, the – and I guess what I would say is that I think this Court should be cognizant of the risk that endorsing this could potentially open another avenue to circumvent those important policies of confidentiality through this method. Let me ask you a question. So after – did you note the salience of the voluntary dismissal to – before Judge Woods? Yes, Your Honor. And I believe – and I believe – Where was that? Sorry, Your Honor, this is on Appendix 39. Yeah. And we were identifying in the context of because the petition had been dismissed that that – in that particular warrant the weight of whether it should be unsealed. Was that the second or third paragraph there? This would be the first full paragraph. I guess one thing that the New York Times raised, and it's brief, I know I'm over time, so I don't want to indulge, but the district – the New York Times has argued that the order can be affirmed under the common law right of access. This is not under the First Amendment right of access. The district court did not reach the common law right of access. We argue that, in principle, the order can be affirmed under the common law right of access. predominantly under Stafford, which we do agree, I think, is the most on-point case here, that the order cannot be affirmed under the common law right of access because this seems pretty squarely on fours. With Stafford, we're aware that, unlike Stafford, there's not the same sort of evidence in this record about what the counsel was doing there. Well, the common law right of access explicitly says you evaluate the weight of the presumption based on the role it played in the judicial decision-making. So I guess there, there's no question that not playing a role in judicial decision-making would be a relevant consideration, right? And I guess your point is, so then that's how it looks just like Stafford, except now we have a media organization as opposed to the attorney himself seeking to unseal it, and that involves the same concern about undermining confidentiality, right? Yes, and I guess I would also – Why does it? I mean, isn't there less of a concern about gamesmanship when we know that there's a bona fide interest in the news media about, you know, covering the information that's in the document? I guess what I'd say here is that I think for us it goes back to the fundamental purpose of the public access, which is to monitor the work of the courts, and that on this particular posture where the court didn't do anything, the fact that the New York Times is seeking to unseal an award bearing on a proceeding that didn't go anywhere. Doesn't it matter that it's – this is not a common law issue? This is a First Amendment issue? In other words, doesn't the presumption then, insofar as it attaches – we can talk about that, but it seems like you acknowledge that it attaches here. Isn't that a much stronger presumption that then needs to be counterbalanced by much stronger countervailing interests and values? Well, I would agree that the standards are distinct and they've been set forth, and that it does seem to call for a higher standard under the First Amendment, but I guess what I'd highlight is that that also requires the determination that the award falls within the First Amendment, which the district court didn't do here because it – Well, it seems to call for a higher standard, but we don't actually know exactly, right? So the First Amendment presumption of public access, the origin of it is that it's an aspect of the public access to courts, and so people have a right to sit in the gallery and observe what the courts are doing, and sometimes having access to a document allows you to understand what the courts are doing, right? Yes. So that means there are at least probably some documents that are not within the scope of that because they might not be really related to something the courts are doing or it might not be necessary to understand what the courts are doing, and there might be higher values that are being furthered, right? So, like, for example, you know, if there's a minor who was the subject of sexual abuse, like, that's not released to the public. Maybe it would help the public understand the court proceedings, but we would say that there's a higher value, right? Well, yes, I guess I would say here that the higher value that weighs against unsealing here is the core principles of confidentiality and privacy under the Federal Arbitration Act, and it's really sort of part and parcel to the whole purpose of that dispute resolution process. So I think here the higher value that's been identified— Why don't we hear from Mr. Suba? Thank you so much. And you reserve some time for rebuttal. Thank you. Did I pronounce your name correctly? You did, Your Honor. Thank you, and may it please the Court, I'm here on behalf of The New York Times Company and Kate Conger, along with my colleague, Jackson Bush. X had ample opportunity before the district court to argue that the First Amendment presumption of access did not apply to the arbitration award. It did not argue that, in fact, it accepted it. It had ample opportunity to make the showing required to overcome the First Amendment or common law presumptions of access. It did not do that either. In some arbitration cases— Well, it did make arguments about that, it's just the district court didn't accept them, right? Like, that's not forfeited, that's just— Oh, I said it did not make the showing required. Right. You're saying—all right, so you're saying it didn't make the showing required, but the district court thinks that whether the document played a role in judicial decision-making is relevant to the common law but not the First Amendment, right? Correct. The Court says— Okay, but why would that be the case? So the reason there's a First Amendment presumption of access is because we say it's an aspect of the First Amendment right of access to courts to observe what the courts are doing. And so by implication, sometimes access to a document that is the subject of judicial decision-making is included in that, right? But doesn't that suggest that whether the document played a role in judicial decision-making is relevant to the strength of the First Amendment right of access? No. No, Your Honor.  Well, first, as an initial matter, this Court has never suggested that the presumption, the First Amendment presumption, varies at all. But under the common law— Anyway, we always apply these two tests, as we haven't really clarified exactly what the relationship is between them, right? But if the district court is right, then there's never a reason to describe the common law test, right? Because the First Amendment test will always be the stronger one. Well, the First Amendment presumption applies to a subset of documents that are judicial documents. But I want to be really clear that Bernstein forecloses this line of reasoning, right? Bernstein involved a complaint that was settled before the district court could take any action upon it, and the court did not say in that circumstance that the presumption could vary because, you know, the court— Well, maybe it didn't matter that it— No, I think it did, Your Honor. Actually, they explain this in the context of the judicial record—judicial document inquiry. It said, even the fact that a complaint has been filed— Right, but that would apply here to the petition for confirmation, as opposed necessarily to the attachment, right? That's sort of the equivalent to the complaint here, is it's showing, look, Mayhew filed a petition to confirm an arbitration award. He had an arbitration award from TwitterX. And that is the sort of pleading, right, as opposed to the attached actual award. Well, that's not a material difference here, Your Honor, because— It is under Bernstein, because Bernstein's whole point is a complaint is what initiates the claim, and that's why it's so important that the complaint itself be— Right, and the Federal Arbitration Act in 9 U.S.C. 13b says the award is a required element of a petition, right? That is the thing that the court is being asked to confirm. There are standards that the court has to apply in the Arbitration Act to that award, right? It's not a tangential ancillary part of the filing. It is core. And this court has never accepted that there is a distinction between motion papers and the papers submitted in support of the motion. Yeah, I was suggesting to the opposing counsel that, you know, we've said whether a judicial document is just a binary thing that we decide up front. So my question is a little different, which is once we assume it's a judicial document and we're doing the balancing, if the basis of the First Amendment interest is about public access to courts, why wouldn't it be relevant when we do the balancing that the document played no role in the judicial decision-making process? Well, I want to make a few things clear. In the common law analysis, that question is considered as to the weight of the presumption, right? Not the countervailing considerations. The focus in the First Amendment analysis is whether closure is essential to preserve higher values and whether the ceiling is narrowly tailored to that. It's not about examining the particular role that a document played. Well, I don't know. I mean, that seems like question begging to me. I mean, usually when we do evaluate something under or some government action under a constitutional standard, we do look at the strength of the government interest compared to the strength of the individual's interest. And so I don't know why that normal balancing wouldn't apply. Why wouldn't we say, you know, the First Amendment interest attaches, but it's weaker when the document would not illuminate for the public how the courts are operating, and then we balance that interest against the, you know, the interest in confidentiality and circumvention of the arbitration rules and that kind of thing. Yeah. And this Court has just never even suggested that possibility, and there's a good reason for that. And I pointed to that, the Bernstein discussion of the fact that papers are filed, the fact that an action is initiated. That's it. That's the ballgame. Correct. Correct, Your Honor. And what Schifrin makes clear is that— So is there—so it's interesting because a petition, these are very ordinary things to give firm reward, and usually quite often, at least in my experience, they're designed for purposes of finality, and they're almost mysterious. I'll just say that. That's my experience. You may equivalent that. But yet you're asking us to attach to that a First Amendment presumption that it's a judicial document, but also that there is no compelling, stronger, countervailing value that would lead us to conclude that you should not have access to the award. Yes. Is that the argument? Correct. I'm saying that in theory, in another case, that showing could be made, of course, right? If an arbitration award has, you know, confidential business information, if it has trade secrets, if it has other information that would meet the First Amendment standard, which is extremely high. But you would agree that if, in fact, the person seeking the unsealing of the award were the attorney who first filed it, then just under staffer, we would say that, you know, it should not be released, right? No, I would not say that. What Stafford said was that there was evidence of an improper motive, and the counsel had stated her desire to use the arbitration award in litigating similar claims. And what the court said was using materials filed publicly to launder their confidentiality through litigation is what's improper. The court did not say— You're saying Stafford only applies when a lawyer expressly says that, as opposed to when a lawyer is, in fact, accomplishing the same thing? No, I think you can—it doesn't have to be stated explicitly, but there has to be some evidence or circumstances that give rise to that inference. How about the filing and withdrawal within nine days? Well, that's because X, I mean, we presume, had chosen to not pay the award until the petition was filed, and then it decided to pay. I mean, there was no controversy at that point to be decided. That's why it was moot. There's nothing improper about that. And, in fact, I would say the fact that there are two months that elapsed between when the arbitration award is rendered and when the petition to confirm is filed tells us she did not rush to court, right? We don't know exactly what happened, but presumably there was some back and forth here. And as Judge McMahon—you know, she has this great decision in Bristol-Myers Squibb where she says, in my experience, there are a lot of sore losers in arbitration. And if you are not going to pay the award, you have to understand that a consequence of that is going to be a petition to confirm. That's a strategic call that you may have to pay for. Absolutely. Do you agree that to the extent that there is gamesmanship, that would mean that it should not be released, but to the extent that there is not, then the presumption would prevail? Is that right? I'm saying under Stafford, evidence of improper conduct is one consideration that the Court takes into account at the third step of the analysis. I have not seen any decision from this Court suggesting that sort of conduct would be relevant in the First Amendment analysis, but the Court doesn't need to reach that question here because— What's the third step of the analysis? The third step of the common law analysis is whether— Only the common law analysis. Correct. Stafford or the common law analysis. Your argument basically makes the common law analysis completely extraneous, right, because the First Amendment test is always going to be a greater presumption of access, and it wouldn't even matter. So if it's only relevant to the common law test, then you actually can engage in the gamesmanship because the First Amendment would require the disclosure even if the attorney is engaging in gamesmanship because that's only relevant to the common law analysis. Well, this Court has other mechanisms to address that kind of conduct. I mean, there are sanctions, right? If you have evidence that a lawyer, an officer of the Court, is engaged in that kind of behavior, the Court can do something to redress that. I mean, I think your other answer is that we don't have to deal with this issue because there's no evidence of improper— Correct. There's just evidence of ordinary strategic behavior where you wait to see what happens, and then there's a petition. Correct, and— I mean, is there really no evidence of improper motive? I mean, this attorney has a history with respect to this practice, and as Judge Merriam pointed out, there's the filing and the withdrawal within nine days. There is no evidence of any improper attempt to evade confidentiality here. That's not my words. That is what the lawyer for X said below. He acknowledged that. And this idea, Your Honor, that the fact that, you know, no court decision was rendered, the Court didn't act, that that should be considered a higher value, that is not an argument that was made either. You know, the relevance of this in X's position in the district court was that it goes to the weighing of the presumption. If you look at its argument about the presumption being overcome, it pointed to the confidentiality of the arbitration proceedings. It pointed to the fact that there was allegedly private information of the position. But they are arguing that it's relevant. You're just saying they don't locate it at the right point of the analysis. The argument was not made. That argument was not made that it's a higher value that overcomes the presumption. But it's not that it's a higher value, right? It is about the weight. I mean, what I was suggesting is we know how the common law presumption works that does include an evaluation of the weight of the presumption. And my question was why wouldn't we understand the First Amendment right to work or presumption to work the same way? Because we've said the First Amendment presumption is just an aspect of the public right of access to courts, and that is going to be stronger or weaker depending on the circumstances of the case, right? So if we prevent people from sitting in the gallery because of some kind of health protocol, but we allow them to watch a live stream as opposed to just making the whole proceeding secret, it would be a different analysis, right, depending on, you know, what it is that we're limiting, like the strength of whether the public gets to monitor what the courts are doing against whatever the interest is that we're trying to achieve. No, I would frame it differently. I would say you look at whether, you know, once the First Amendment test is met, and, again, I'm just recounting what this court has said in its precedence, you don't check whether the presumption is heavy or low. It's met. It applies the same. Exactly, exactly. And in the hypothetical you described, the court would look at, you know, this is a restriction on access. There's a First Amendment right to attend hearings like this. Is the health protocol a restriction that is a higher value, and is it narrowly tailored? And what I think you're saying is that that argument was not made. Correct. In other words, the argument was these are confidential documents, end of story. Correct. And the confidentiality of the documents is not the – doesn't fall within the category of higher values that we've recognized. Is that? The mere agreement, these documents should remain confidential, the fact that that's in an arbitration agreement is not itself a higher value. It's not even, in fact, a countervailing consideration enough to overcome the right of access because what the court said in Stafford is you look at confidentiality, yes, but there's something actually else important going on here. The words the court uses is, you know, the district judge did not take into account the full context of the motion. So it never says confidentiality is enough to overcome. But why wouldn't confidentiality be a higher value? So if it were true that we have a system of arbitration and an aspect of it is confidentiality and that allows the arbitration process to work, if every subject of an arbitration knows that if his case is newsworthy, he could file it on the docket and escape the obligation of confidentiality to which he agreed in a confidentiality agreement, that would undermine the system. Like, that is a – even if we don't decide whether that overcomes the First Amendment interest, that is at least a competing value, is it not? No, Your Honor. I think – So we don't consider that at all? It is not a higher value under the First Amendment analysis, and that's for a couple reasons. One is that it's an agreement made between two parties outside the context of the courts, and the right under the First Amendment is the public's right of access. They cannot contract away that right. And there's also the fact that, of course, the ceiling standard – Well, they can't contract away their right, I understand. But we balance the public's right of access against the competing consideration, which might be that we also respect agreements to arbitrate that include confidentiality agreements. Like, that is a – that is a thing we care about, right? What I can say, Your Honor, is that companies that arbitrate, especially those that arbitrate regularly, understand the consequences of a confirmation proceeding filed. There's lots of guidance out there telling people if this needs to go to court, if you do not pay your reward and a confirmation proceeding is required, you have to understand that the documents may be made available, that the presumption of access applies. So you said – you said – and just to pick up on the questions from Judge Minasci, you said at one point a number of minutes ago that, well, if it were confidential – specific confidential business records, that might be a reason to, I guess, to – with respect to the First Amendment value for not disclosing that. Is that right? Correct. Why would that be a reason? Well, because a party has come forward, and ostensibly it's done so with evidence, to say I'm going to be – you know, competition is going to be – my ability to compete in the market by disclosing this information to competitors is going to be injured. There are trade secrets in the arbitration award. So it's values that flow from whatever the information is that's confidential, not the confidentiality itself. Correct. And the way that this Court has talked about what kinds of values qualify as higher values really reaffirms that. You know, you look at a case like Bernstein, which involved allegedly confidential client information in a complaint, and the Court says we don't even think that rises to a higher value. Attorney-client privilege information does, but that does not. Attorney-client privilege information does because the attorney-client privilege is a sort of systematic confidentiality interest that if we allowed it to be evaded would undermine the system. It's an ironclad privilege that exists basically in every common law jurisdiction that says when you communicate with your attorney, you do so. When you communicate confidentially for the purpose of seeking legal advice. Why doesn't the confidentiality of arbitration proceedings, why isn't it comparable to that? I mean, that is a contract. That is an agreement that two parties decide to make that they're under no obligation to make. Even if it were true that X corporation needs to explain, you know, the particular harm that might happen as a result, why shouldn't it be that they should get to file a separate motion? So they say we were just opposing the Times' motion to unseal, but we said specifically that if you're going to, if you're inclined to grant it, we want to be able to have a more full explanation of why we need it to be sealed that we can't explain in our limited response to their motion. So why wouldn't we at least say the district court should entertain their full statement of reasons for the sealing? Which might include something like you're describing. Well, because you're speculating, Your Honor. X never said that we would argue that the disclosure of this information would hurt us as a business. In fact, they identified certain values, higher values, that it said overcame the First Amendment presumption. But isn't that specifically when they say we think that this argument that we're presenting is enough, but if you don't think it's enough, we would provide a bigger, a broader statement of our reasons for wanting to seal it. And, I mean, let's forgive them for filing a three-page letter when the court explicitly invited them to file a motion to seal, which, of course, is, you know, subject to the usual motion requirements. That was just not something that they specified. They never said. I mean, if they had said we have not had the space here to explain the serious injury to us that would flow from disclosure, that would be different. They're not even saying that in this court. What they're saying is there's a generalized interest in confidentiality. They're not asking for a tailored narrowing or redacted anything. The only thing that was identified specifically was the amount of the award. And they referred to this below. They said there is private financial information of the petitioner. Mr. Mayhew does not make the argument in this court. X does not make the argument in this court. So you're saying that instead of saying we would like the opportunity to file a fuller motion to seal, they had said expressly something like we think confidentiality is enough, but if you don't agree, we would like to file a fuller motion that explains the particular interest at stake. That would be enough to put something right? I'm pointing to one problem of several. And I think it's important to take into account the context here, which is that the district court forgave X and Mr. Mayhew when they both failed to file a motion to seal by February 12th. The court gave them another opportunity. And this is what they chose to file. And if you look at the letter, it really speaks for itself about the arguments that they chose to make. Where is that letter? It's at A38 to A40 of the appendix. And there are some things here I would like to highlight, even though they're in our brief. On two occasions, X says there are higher values that outweigh the First Amendment right of access, which would lead you to think reasonably, do they accept that the First Amendment right applies? They say, though Stafford did not involve the First Amendment right of access, you can only make sense of that if they accepted that the First Amendment presumption applies. They also say there's no improper attempt to evade confidentiality. I mean, if they felt like they had no space to make these arguments, and that's not actually what this letter shows, they could have asked the district court, we'd like to file a longer motion. But they did say that, didn't they? Well, they didn't say, you know, we don't have the space here to make our arguments. We just want another bite of the apple. That's all they said. But they didn't say we just want another bite of the apple. They did say they'd like to file a motion. I mean, doesn't that imply they would say something more than they said in that opposition? No. I mean, they just said they didn't say anything about what kinds of arguments they would make. And if they felt like they had, you know, we and the court had misunderstood them as when they hadn't actually done so, they could have filed, you know, a request to file another brief and say, actually, our position has not been made clear. We'd like to do that. If, you know, after the court issued its ruling, allegedly misunderstanding what they had said in their letter, they could have filed something and said, we'd like a motion for reconsideration here because we don't feel like our position has been properly represented. They did none of those things. And I think, you know. So you're saying this is sort of a one-off, unique case because of what you would describe as these forfeited and abandoned arguments? I'm saying that this is a perhaps the easiest way for the court to dispose of this case. I mean, we very much stand behind it. Well, in order to dispose of the case, we would have to say that confidentiality, the confidentiality of arbitration proceedings is just never outweighs the presumption of public access. That the mere existence of an agreement to resolve something on confidential terms does not constitute a higher value. I mean, the whole reason we have these litigations in the context of First Amendment presumptions is when something is at least either deemed to be or argued to be confidential. This doesn't arise in any other context. Am I right? In other words, when do we really grapple with these First Amendment presumption cases? We grapple with them when one side says, and only because I think one side says it's confidential. So we should either seal the courtroom or we should seal documents or it never arises in any other context. So necessarily part of the analysis is there's something confidential and then there's a First Amendment presumption. What else is there that helps us to assess whether that thing that is claimed to be confidential should be sealed or open to the public? Am I missing something? Because you're pausing. Yeah, I'm trying to make sure I understand the point. I mean, I think you look at this Court's precedence on common law and First Amendment presumptions. The bar is high for what counts as a countervailing consideration. No, the point, the point, the question is confidentiality is a necessary component of every case in which the issue of First Amendment, of a First Amendment presumption arises. Am I right or wrong about that? Yes. And I think what is different here, I'm understanding now, Your Honor, what's different here, X would say, is that there was an agreement made outside this Court, a private agreement, to keep matters confidential. But you're right. You know, in every instance where the First Amendment presumption is going to be invoked, some document has been placed under seal.  So you're saying that this kind of case only arises when there's, somebody has claimed that the information should be confidential. But you also agree that there are some reasons for confidentiality that would overcome the presumption. But that's just the fact of the confidentiality. Correct. And here the argument is not the fact of the confidentiality. It's the honoring the arbitration agreements and maintaining the system of  I understand your argument is that that's not good enough, but, like, that is a reason for confidentiality, you would have to say, is not sufficient in this case, if we decided the case in your favor. That fact alone is not enough to overcome the weighty First Amendment presumption. So we get that argument. Well, thank you very much. Thank you, Your Honor. We'll hear from Counselor X. Mr. Trujillo-Jameson? Did I pronounce that correctly? Yes, you did, Your Honor. Okay, great. If I may briefly address a couple of points that came out in the argument here. I want to highlight something that Judge Lajere made about that ordinarily, these are sort of ministerial proceedings in the district court. But I think it's important to understand, I think, the full context of the Times argument and the follow-on effects. If I understand their argument correctly, they're saying that because an arbitration award is required to be attached to a petition to confirm, and if they invoke the First Amendment, then that automatically triggers a very high standard for that award to be sealed. What that calls into question is the very purpose of arbitration itself. Because if that's the system that would be affirmed by this court, that would require each arbitration, I think it would require— No, no, no, no, no. I think that the more nuanced argument is that we all make, as litigators, and I was one, strategic calls. And so you can settle—actually, maybe the more nuanced argument is that this process that The New York Times is urging, or inviting, helps motivate parties to abide by the awards that are given by arbitrators before they get to us. Because once you get to us, then these confidentiality issues may go out the window. That's, I think, what the argument—part of the argument is. Well, I guess I would say that would open—that would open—that would invite the courts to be sort of put—to be put in a position to sort of exert leverage over a confidential private proceeding. No, no, no, no. It's—we're here to help arbitration, right? So if you lose and there's an award against you, then it's actually consistent with the Federal Arbitration Act that you pay that award and don't come to court. But I think it's the issue is that if the trigger results in effectively almost automatic public unsealing of the awards, then it basically erodes the purpose of— Well, there may be—I think there's—the acknowledgment from The New York Times is that there may be some circumstances under which the First Amendment presumption is outweighed by these higher values, but this is not that case because all you've identified is the fact of confidentiality, and that's not enough of a value. I guess I would dispute that, Your Honor. It's both that—it's not just the fact that the parties contracted for this to be confidential. The arbitration—arbitration agreement arises under the Federal Arbitration Act, and Congress has stated very clearly a strong interest in the privacy of arbitration proceedings. So it's not just the fact that the parties— But one aspect of the federal policy favoring the enforcement of arbitration agreements is to enforce agreements for confidentiality, right? And you're saying that if, in fact, it became true that whenever somebody wants to walk in— walks into court, the confidentiality agreement is dissolved effectively. That will create—that will alter the dynamic between the parties, and whichever party has less of an interest in confidentiality now has a lot of leverage to get out of an arbitration agreement or an arbitration award if they walk into court and can effectively expose—or undo the confidentiality agreement. I would agree with that, and that's something I think also the amicus party, the Chamber of Commerce, well explained in their amicus brief. It's sort of the—it's a tipping point issue where if this becomes sort of the law in the Second Circuit, then that really does fundamentally, to its core, undermine the whole purpose of the job. I asked Mr. Sumar about your request to file a separate motion, and he said, well, you never really identified what you would say if you got to file a separate motion. Maybe if you had said we have trade secrets at issue or other information at issue, that might have been enough to suggest that issue court should have allowed that to happen, but you didn't say that. So what's your response to that? Well, one I would say is that—and again, admittedly, I think the—in terms of the page limits, at least to us it was a little unclear how much we were given latitude, given the times of original motion to unseal. The footnote was literally the last word on the third page of the three-page brief, so we didn't have additional space to elucidate what those reasons would be. I think the issue here is that I think had we had another chance, we would have had a full opportunity to fully brief this issue. But are there interests like trade secrets at stake? Is there something like that that you would say if you filed a fuller motion? They're not—the issue is that the contents and reasoning of the arbitration award, which is elucidated in the award, that's the type of thing that, again, the parties agreed would become confidential, and I think that highlights the kinds of concerns that this Court has acknowledged in the other cases involving Mr. Maheu's counsel, which is that if you open that up, it allows that confidential information to be used in other proceedings, and that again— So Stafford does talk about the common law presumption rather than the First Amendment, but if this is what the First Amendment allows, then we'd never reach the same results in Stafford again, because the First Amendment would always allow the disclosure of the arbitration award, right? I agree with that, but I think it also goes to why I think— and this is the, again, a space in the district court's order. We didn't get a determination as to why this particular type of award satisfies the experience and logic test, and that if the Court were inclined to remand for a decision on that, we could fully brief that particular issue and not leapfrog, which I think is the—perhaps is the threshold issue that you need to decide in order to align the common law right of access with the First Amendment. And, counsel, how is this narrowly tailored? I don't think we've reached that question. I think— To seal the entire arbitration award as opposed to some portions of it. Because the arbitration—because the arbitration itself is supposed to be kept confidential, I actually don't think that there's a— Well, we know there was an arbitration. Yes. And we know there was an award, and we know it was in favor of Mr. Maheu. So doesn't that seem like there's some parts of this document that could safely be unsealed? Well, I guess I'd say we never got the opportunity to fully address that with the district court. And I think if the court were inclined to— But your request was only to seal the entire thing, right? Well, we did propose some—we proposed a redacted version, precisely because the petition itself had already released into the public record certain information that was already in the award. Judge, do you propose the redacted version in your opposition to the Times' motion? Yes. In the letter? Yes, Your Honor. But because in looking at that award, there was certain information that by that time had already been made public. And is that the redacted version that we have in the sealed appendix? Yes, Your Honor. Thank you so much. Thank you very much, Your Honor. Thank you for your resolute decision.